23 So.3d 748 (2009)
AFSCME FLORIDA COUNCIL 79, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, Appellant,
v.
STATE of Florida, DEPARTMENT OF CORRECTIONS and Department of Management Services, Appellees.
No. 1D08-1621.
District Court of Appeal of Florida, First District.
November 13, 2009.
*749 Tobe M. Lev of Egan, Lev & Siwica, P.A., Orlando, for Appellant.
Alan R. Dakan, Assistant General Counsel and Mark Henderson, Assistant General Counsel, Tallahassee, for Appellee Department of Corrections, and Sonja P. Mathews, Assistant General Counsel, Tallahassee, for Appellee Department of Management Services.
BENTON, J.
Appealing on behalf of John Parrish  formerly an employee of the Florida Department of Corrections (DOC)  AFSCME Florida Council 79 (AFSCME), a public employee union, seeks review of a circuit court judgment vacating and declining to enforce an arbitration award (itself a clarification of the arbitrator's original award) that brought to an end arbitration to which the parties resorted after they failed to agree on how to resolve Mr. Parrish's grievance. We reverse and remand with directions to confirm and enforce the arbitration award.
John Parrish began working for DOC in 1989. After various maladies led to extended medical leave, he applied for disability retirement. While this application was pending, he received a letter from DOC dismissing him from employment effective May 24, 2001, for inability to perform his job duties. With union assistance, *750 he filed a grievance under the Master Agreement.[1]
The grievance filed on Mr. Parrish's behalf asserted that his discharge was "not for just cause," and requested that he be "returned to work; given back pay; further, the grievant's dismissal letter with all related documents be sealed and stamped `not valid.' (Make whole)." While the grievance was pending, on July 13, 2001, his disability retirement application was approved; he was added to the roll of disabled state retirees in October of 2001, and monthly disability retirement benefits were paid retroactively to June 1, 2001. His retirement did not resolve all issues, however, and the parties ended up in arbitration after other approaches[2] to resolving the grievance proved unavailing.
The arbitrator eventually ruled that DOC had lacked "just cause" to discharge Mr. Parrish because it had failed to comply with certain personnel rules. Noting that, on account of his disability retirement (effective retroactively to June 1, 2001), all that AFSCME had requested was "Parrish's reinstatement from his May 24, 2001, termination date up to June 1, 2001, with `full make whole relief, including health insurance,'" the arbitration award ordered:
a) retroactively reinstate Parrish from his May 24, 2001, discharge date; and,
b) amend, change or reform its records pertaining to Parrish to reflect,
i) the setting aside of his discharge,
ii) his May 24, 2001 reinstatement, and
iii) that on and effective June 1, 2001, Parrish retired as an active employee (as opposed to a discharged employee) under the regular disability provisions of the Florida Retirement System Pension Plan, Chapter 121, Florida Statutes.
3. Agency shall further and retroactively make Parrish whole by promptly recomputing, crediting and/or paying to him any applicable back pay and health, life and group insurance benefits1 contractually and/or lawfully due and owing him [if] (as is the case) he disability retired on June 1, 2001, and had not been discharged on May 24, 2001.
1 AFSCME contends Parrish is entitled to the group insurance benefits stated in Section 112.0801, Florida Statutes. The Agency's position on same is not known since the issue is not addressed in its brief.
The arbitrator's original award reserved jurisdiction "only to resolve any back pay or benefit payment/computation dispute(s) which may arise."
Asserting that this arbitration award was intended to enable Mr. Parrish to enroll in a state health insurance program, but that the state had taken the position that he was not eligible, AFSCME filed a complaint in circuit court[3] on September *751 16, 2005, asking the circuit court[4] to confirm and enforce the original arbitration award.[5] As requested in AFSCME's motion, the circuit court remanded to the arbitrator for "clarification of the Defendant's obligations under the award with respect to Mr. Parrish's health insurance."
On remand, in the "clarification award" (which was vacated by the judgment now under review), the arbitrator set out the following:
The record is undisputed that as a retired State employee, Parrish was entitled to uninterrupted State health insurance coverage ... commencing on or about the effective date of his State approved disability retirement date with his portion of the monthly premiums deducted from his monthly disability benefit checks. The record also shows that an error by Corrections caused Parrish's State health insurance coverage to lapse or terminate on July 1, 2001, and not until on or about February 14, 2002 (i.e., more than eight months after his June 1, 2001 disability retirement date), was Parrish again offered State health insurance coverage retroactive to July 1, 2001. Said coverage, however, was contingent upon his payment to the State of all retroactive premiums from July 1, 2001, which then totaled $2,148.62.
According to Parrish's arbitration testimony, starting in or about July 2001, he made numerous calls to the State requesting that his health insurance coverage be restored. However, by mid-February 2002, and while he still desired coverage, he had no ability to pay for the retroactive premiums....
Being that the CBA [collective bargaining agreement] is between AFSCME and the State of Florida, the "Agency" as referenced in the Arbitration award is the State of Florida acting by and through its many agencies, departments and divisions including but not limited to its Department of Corrections, Department of Management Services and Division of State Group Insurance. The award, accordingly, requires the State of Florida (by and through its agencies, departments and divisions ...) to retroactively make Parrish whole....
In light of the above, ... the Defendant's "obligations under the award with regard to Parrish's health insurance" are as follows:
A. To Forthwith Offer Parrish Non Retroactive Health Insurance Coverage.... And should Parrish accept coverage under this Paragraph A, (1) the cost of all monthly premiums shall be deducted from Parrish's monthly disability retirement check; (2) coverage shall not be denied, withheld, limited or otherwise reduced by the State for any pre-existing medical conditions; and (3) coverage shall not be retroactive to any time period prior to its effective date. [Mr. Parrish has indicated he wants this option.]
B. To Forthwith Offer Parrish Health Insurance Coverage Retroactive to After *752 July 1, 2001.... And should Parrish elect to receive retroactive coverage under this Paragraph B, ... Parrish's payment to the State of all monthly retroactive premiums shall be made by reasonable deductions (not to exceed $50.00 per month, unless a greater amount is agreed to by Parrish), from each of his monthly disability retirement checks until all of said retroactive premiums are paid.
(Footnote omitted.) The parties then returned to circuit court, with DOC and DMS filing a motion to vacate, and AFSCME filing a motion to enforce, the new award.
The circuit court granted the motion to vacate the award and denied the motion to enforce the award, ruling:
4. The Clarification ... goes far beyond what Plaintiff requested when he filed his grievance and what was originally awarded.
5. In this case it is clear that the Clarification of the Arbitrator speaks to agencies that were never made a part of the arbitration.
6.... Parrish never sought to address the issue of the State of Florida Insurance Health Care Plans through the administrative remedies available to him under Section 120.565, Florida Statutes.
7. The Clarification ... is contrary and inconsistent with the powers, duties and responsibilities of the State under applicable law or rules.
The trial court subsequently entered final judgment in favor of DOC and DMS and against AFSCME and Parrish, the judgment now before us.
AFSCME asks us to reverse, arguing that an "arbitration award can be vacated only upon the grounds stated in Section 682.13," Harris v. Haught, 435 So.2d 926, 928 (Fla. 1st DCA 1983), and "cannot be set aside for mere errors of judgment either as to the law or as to the facts." Schnurmacher Holding, Inc. v. Noriega, 542 So.2d 1327, 1328 (Fla.1989) (quoting Cassara v. Wofford, 55 So.2d 102, 105 (Fla. 1951)). AFSCME concedes that subsections 682.13(1)(c) and (d), Florida Statutes (2007), provide that the court shall vacate an award when the "arbitrators or the umpire in the course of her or his jurisdiction exceeded their powers" or "otherwise so conducted the hearing, contrary to the provisions of s. 682.06, as to prejudice substantially the rights of a party." But in Florida, they point out, "the standard of judicial review applicable to challenges of an arbitration award is very limited, with a high degree of conclusiveness attaching to an arbitration award." Applewhite v. Sheen Fin. Res., Inc., 608 So.2d 80, 83 (Fla. 4th DCA 1992).
Specifically, AFSCME contends that the circuit court erred in concluding that the final arbitration award exceeded the scope of the grievance (and the scope of the initial award) and in concluding that the award contravened "powers, duties and responsibilities of the State under applicable law or rules"; in concluding that DMS suffered some procedural unfairness; and in concluding that AFSCME or Mr. Parrish had a duty to exhaust administrative remedies before pursuing the grievance. Examining each of these grounds (in reverse order), we agree that all are erroneous and that the circuit court's judgment vacating and refusing to enforce the arbitration award must be reversed for that reason.
The Master Agreement contains no "exhaustion of administrative remedies" requirement. The Master Agreement created the grievance procedure, culminating in arbitration when necessary, as an alternative to judicial or administrative *753 proceedings, at the grievant's option. The Master Agreement obligated the state to comply with the State Employees Group Health Insurance Plan, and afforded the arbitrator authority to award relief to remedy "unjust" terminations. DOC's failure  as found by the arbitrator  to provide Mr. Parrish notice and a pretermination conference, to notify him properly of his rights to continued health insurance, and to accept his (employee) contributions towards health insurance premiums were grievable actions. The Master Agreement defines "grievance" to mean "a dispute involving the interpretation or application of the specific provisions of this contract, except as exclusions are noted in this Contract."
The grievance procedure is available in lieu of, not simultaneously with  or only after resort to  judicial or administrative procedures under section 120.569, Florida Statutes (2001). Although DMS indicated in a letter dated February 14, 2002 (addressed to the DOC Orlando Service Center) that Mr. Parrish would be permitted to re-enroll in the state health insurance program if he paid premiums from July 2001 through March 2002, this letter does not reflect that he was informed of any right to an administrative hearing or judicial review to contest the back premium payment condition available under sections 120.569, 120.57, or 120.68, Florida Statutes (2001), much less that he instituted any such proceedings. The Master Agreement provides, under the heading "Election of Remedy," that the agreement may not be construed to permit the union or an employee to process a grievance when the subject of such grievance is at the same time the subject of an administrative action, or an appeal before a governmental board or agency, or court proceeding. But no such action, appeal or proceeding took place in the present case at any time.
The circuit court assigned as another reason for vacating the arbitration award the fact that the award "speaks to agencies that were never made a part of the arbitration," meaning DMS and/or DMS's Division of State Group Insurance (DSGI). On appeal, DMS argues similarly that the final arbitration award should not be confirmed because DMS/DSGI was not provided notice or an opportunity to participate in the arbitration proceedings, in purported violation of section 682.06(1)(a) Florida Statutes (2007), which requires service of "notification to the parties." We reject these arguments.
DMS cites no statutory or rule authority mandating that an employee bring DMS/DSGI into an employment grievance proceeding as an additional party. The Master Agreement and pertinent rules contemplate that an employee will deal primarily with the employing agency, including with regard to matters of insurance for retired and dismissed employees. See Fla. Admin. Code R. 60P-2.011, 60P-2.013. The arbitrator had to decide whether DOC wrongfully terminated Mr. Parrish and, if so, what remedy was appropriate. The arbitrator had full authority to determine an appropriate remedy when an employee was terminated in violation of the agreement.
Nothing in the Master Agreement or the rules regulating DMS or DSGI requires that DMS be included as a party before an arbitrator may award benefits either retrospectively or prospectively.[6] (As the arbitrator noted, moreover, AFSCME raised the termination of Mr. Parrish's health *754 insurance at the Step 3 grievance appeal hearing conducted by DMS on July 1, 2001.) The parties do not dispute that all pertinent grievance procedures were followed, including arbitration procedures, or that an arbitrator has authority to award back pay with benefits, including health insurance, when an employee is entitled to such benefits.
The circuit court also erred in vacating the final arbitration award based on its belief that it exceeded the scope of the grievance and the initial award. The learned trial judge failed to give appropriate deference to the arbitrator's findings. The initial award had ordered "full make whole relief, including health insurance," and reserved jurisdiction if details could not be worked out. The arbitrator found that the initial award "addressed AFSCME's request that the [arbitrator] remedy what it deemed as the State's continuing failure to provide Parrish health insurance and other benefits due all State employees who[ ] disability retire." This finding was entitled to deference.
The arbitration award violates no state law or rule. The arbitrator found that DOC's error[7] caused Mr. Parrish's state health insurance coverage to lapse or terminate on July 1, 2001. State group health insurance Mr. Parrish had while employed apparently remained in effect until June 30, 2001. The arbitrator was entitled to conclude that, even though Mr. Parrish had tendered a check for the next premium due, DOC refused payment by mistake, canceled his coverage, and never advised him how coverage could be reinstated. No rule covered Mr. Parrish's precise circumstances where he prevailed in the sense that reinstatement was ordered but, because by then he was already on disability retirement, he never actually resumed employment.
DMS invokes Rule 60P-2.011, Florida Administrative Code, which provides that an employee who applies for disability retirement and who has not been approved or rejected prior to his last day of employment, but was covered under the state health insurance program as of the last day of employment, has the option of continuing coverage pending approval or rejection of disability retirement by paying the full monthly premium[8] or allowing coverage to terminate on the last day for which contributions have been paid, and applying for reenrollment in the health program by completing an application and paying all back premiums after disability retirement is approved. In the present case, however, the arbitrator had a basis for finding that Mr. Parrish sought to obtain continuing coverage when he tendered a check to DOC for the July premium, that DOC rejected the payment despite the *755 rule, and that Mr. Parrish's coverage terminated on June 30, 2001, as a result. The record also supports finding that Mr. Parrish was not advised of his health insurance options even when he was approved for disability retirement on July 13, 2001. On fact finding and legal conclusions alike, the arbitration award is owed great deference.
In Noriega, 542 So.2d at 1328, the court said:
[I]t is well settled that "the award of arbitrators in statutory arbitration proceedings cannot be set aside for mere errors of judgment either as to the law or as to the facts; if the award is within the scope of the submission, and the arbitrators are not guilty of the acts of misconduct set forth in the statute, the award operates as a final and conclusive judgment." Cassara v. Wofford, 55 So.2d 102, 105 (Fla.1951). See also District School Bd. v. Timoney, 524 So.2d 1129 (Fla. 5th DCA 1988); Prudential-Bache Securities, Inc. v. Shuman, 483 So.2d 888 (Fla. 3d DCA 1986); McDonald v. Hardee County School Bd., 448 So.2d 593 (Fla. 2d DCA), review denied, 456 So.2d 1181 (Fla.1984); Newport Motel, Inc. v. Cobin Restaurant, Inc., 281 So.2d 234 (Fla. 3d DCA 1973).
Similarly, the award in the present case was well within the submission to the arbitrator, violated no law or rule, and should be given effect.
Accordingly, we reverse and remand with directions that the circuit court confirm and enforce the arbitrator's award.
HANKINSON, JAMES C., Associate Judge, concurs; HAWKES, C.J., dissents with opinion.
HAWKES, C.J., Dissenting.
I respectfully dissent. I believe the trial court correctly concluded the 2007 "clarification" was invalid. In awarding the Petitioner the right to have his long expired health insurance reinstated, without requiring him to pay past premiums, the arbitrator exceeded his authority and entered an order beyond the scope of the arbitration. See § 682.13(1)(c) Fla. Stat. (2008)
The following facts are relevant: on May 5, 2001, the Petitioner was fired; on July 1, his health insurance coverage was terminated; and on July 13, he was officially classified as "disability retired." Pursuant to Florida Administrative Code Rule 60P-2.011, Petitioner was entitled to reinstatement of his health insurance coverage upon obtaining "disability retired" status on July 13. However, in order to have his coverage reinstated, he was required to submit a reinstatement application to his former provider within 31 days after approval of the "disability retirement."
Rule 60P-2.011 provides:
(b) The employee may elect not to continue coverage in the Health Program pending the determination of disability retirement and thereby allow such coverage to terminate on the last day for which contributions have been paid. If coverage is allowed to terminate and:
1. The disability retirement is subsequently approved, the employee may apply for reenrollment in the Health Program subject to the following requirements:
a. The employee shall complete an application in accordance with paragraph 60P-2.011(1)(a), F.A.C., indicating the disability retirement status and submit to the former agency personnel office who must forward such application to the Department no later than 31 calendar days after the date of approval of the disability retirement;

*756 b. The retiree shall pay all back premiums from the date of termination of coverage within 31 calendar days after the date of approval of the disability retirement since coverage must be continuous.
Fla. Admin. Code R. 60P-2.011. (emphasis added).
Petitioner did not apply for reinstatement of his health insurance within 31 days of receiving "disability retired status." Because there may have been some confusion due to the particular facts of this case, DMS sent a letter to Petitioner, dated February 14, 2002, offering him the opportunity to be reinstated upon payment of applicable back premiums (as required by rule 60P-2.011). The back payments at that time totaled $2,148.62. Petitioner did not act on the invitation and made no effort to have his health insurance coverage reinstated.
Two years and nine months after DMS' offer of reinstatement, the original arbitration award was issued. During the arbitration, the arbitrator was charged with determining how Petitioner being fired on May 5, 2001, impacted his disability retirement. The arbitrator ultimately decided to "retroactively make [Petitioner] whole by ... paying to him any applicable ... health, life and group insurance benefits... due and owing him if he disability retired on June 1, 2001." Of course, rule 60P-2.011 would still require the Petitioner to repay back premiums.
Nearly 6 years after the Petitioner obtained disability retired status, the arbitrator entered a clarification. In the clarification the arbitrator provided the Petitioner two insurance related options: (1) pay all back premiums and receive retroactive coverage; or (2) re-join prospectively (excusing his lack of participation in the insurance program for six years). Such an award was not part of the original grievance, nor is it a determination pertinent to the resolution of the original issue.
The stated goal of the arbitration was to make Petitioner whole for being improperly fired while his disability retirement approval was pending. Had Petitioner not been fired on May 5, he would have continued to pay his insurance premiums in exchange for coverage until the day his disability retirement took effect. Upon retirement, he would have had the option to continue coverage by having his monthly premium deducted from his disability retirement pension check.
Obviously, Petitioner was fired on May 5 and DMS terminated his health insurance coverage. However, upon learning of the Petitioner's subsequent disability retirement, DMS offered him the opportunity to retroactively enroll in its insurance program by paying the back premiums. Had Petitioner never been fired and wished to continue his coverage, he would have had to pay these premiums when they were due. Thus, it was entirely reasonable for DMS to conclude that if Petitioner were to be awarded full back pay, he should be required to pay the premiums that would otherwise have been deducted from it.
As noted, the arbitrator determined Petitioner could opt to resume coverage without being subject to back premiums. Basically, the arbitrator "made Petitioner whole" by awarding him not only a free pass on the $2,148.62 that he owed in back premiums as of February 14, but also a free pass on several years of additional back premiums totaling roughly $16,700.00. This was far more than making Petitioner whole and is in direct conflict with rule 60P-2.011.
Petitioner was eligible to apply for reinstatement of his health insurance immediately after being classified as disability retired. He simply neglected to do so *757 (even after the February 14, notice). As a result, his ability to restore coverage lapsed. There is no statutory authority entitling Petitioner to reinstatement without cost, simply because he has come to regret his voluntary decision to decline to participate in the retirement health insurance program. Accordingly, I believe our obligation under the law is to affirm.
NOTES
[1] The Master Agreement, a collective bargaining agreement which binds AFSCME and the State of Florida alike, calls for the signatures of the Secretary of the Department of Management Services (DMS), as well as the Governor. Article 27 of the Master Agreement provides that the State must administer its Group Health Insurance Plan in accordance with statutory provisions affecting the plan or its operations. Article 7 provides that termination of an employee must be for "just cause." Article 6, Section 3 confers upon a duly selected arbitrator authority to remedy violations of the Master Agreement, and provides that an arbitration award "shall be final and binding on the State."
[2] Among other things, the Master Agreement provides that "Step 3" of the grievance process is an appeal to the Chief Negotiator of the Department of Management Services.
[3] The complaint named "State of Florida (Department of Corrections) Department of Management Services" as defendant. The 2004 arbitration award named the "State of Florida, Department of Corrections, Marion Correctional Institution" as the agency/employer.
[4] The complaint was initially filed in Orange County Circuit Court. After the parties stipulated to a change in venue, AFSCME re-filed the complaint in Leon County Circuit Court on May 15, 2006.
[5] DOC filed a petition for writ of certiorari, asserting the circuit court did not have jurisdiction to remand the original award to the arbitrator. Another panel of this court denied the petition on March 27, 2007. Dep't of Corr. v. AFSCME Fla. Council 79, 952 So.2d 1194 (Fla. 1st DCA 2007) (Table). We have not been asked to review the circuit court's jurisdiction at that juncture and express no view on the question. The circuit court's jurisdiction to confirm and enforce the award now under consideration is clear.
[6] We note that DMS was involved in negotiating the Master Agreement with AFSCME. The Master Agreement could have included a requirement that the employing agency involve DMS/DSGI in arbitration, but does not contain such a requirement.
[7] There is no indication in the record on appeal that either DOC or DMS notified Mr. Parrish of his eligibility to re-enroll after the arbitrator's initial award. Rule 60P-2.013, Florida Administrative Code, provides that if an employee is dismissed, the employee may apply to DMS for continuation coverage within 60 calendar days after notification of eligibility by DMS or purchase a conversion plan offered by the servicing agent within 31 days. There is no indication in the record that Mr. Parrish was so notified.

This rule also provides that if a dismissed employee successfully appeals the dismissal and is reinstated, the employee has several options including applying for reenrollment by completing and submitting an application to the agency personnel office within 31 calendar days after returning to work or during the open enrollment period (with no requirement of paying back premiums). In the present case, however, Mr. Parrish did not actually return to work.
[8] To continue coverage, an application and a personal check or money order must be received by the employee's former agency personnel office and timely forwarded to DMS.